RECORD NO. 13-1791

IN THE

# United States Court of Appeals
### FOR THE FOURTH CIRCUIT

JERRY LEE RHODES &
BONNIE M. COCHRAN,

*Plaintiffs-Appellants,*

v.

HARTFORD FIRE INSURANCE COMPANY,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA,
AT CHARLESTON

**RESPONSE BRIEF OF APPELLEE**

Archibald Wallace, III
Thomas J. Moran
WALLACEPLEDGER, PLLC
The Capstone Center
7100 Forest Avenue, Suite 302
Richmond, Virginia 23226
(804) 282-8300
axwallace@wallacepledger.com
tmoran@wallacepledger.com

*Counsel for Appellee*

August 30, 2013

LANTAGNE LEGAL PRINTING 801 East Main Street Suite 100 Richmond, Virginia  23219 (804) 644-0477
A Division of Lantagne Duplicating Services

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____        Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

_____

who is _____, makes the following disclosure:
        (appellant/appellee/amicus)

1.      Is party/amicus a publicly held corporation or other publicly held entity?      YES      NO

2.      Does party/amicus have any parent corporations?                          YES      NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                          YES      NO
        If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
financial interest in the outcome of the litigation (Local Rule 26.1(b))?        YES    NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    YES    NO
If yes, identify any publicly held member whose stock or equity value could be affected
substantially by the outcome of the proceeding or whose claims the trade association is
pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                        YES    NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____        Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE
**************************
I certify that on _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

_____        _____
(signature)                             (date)

# **TABLE OF CONTENTS**

Page

DISCLOSURE OF CORPORATE AFFILIATIONS .................................ii

TABLE OF AUTHORITIES .......................................................v

COUNTER STATEMENT OF THE ISSUES ...........................................1

COUNTER STATEMENT OF THE CASE ................................................1

COUNTER STATEMENT OF THE FACTS ..............................................3

SUMMARY OF ARGUMENT ....................................................8

ARGUMENT ........................................................................9

I.      Standard of Review .........................................................9

II.     The District Court Acted Within its Authority Under Fed. R.
        Civ. P. 60(a) to Amend the March 5, 2013 Dismissal Order ..........11

III.    The District Court Properly Ruled that the Plaintiffs Are Third-
        Party Claimants and Therefore Barred from Asserting Claims
        For Statutory Bad Faith or Common Law "Substantially
        Prevailing" Damages ......................................................14

        A.      Statutory and Regulatory Background ...................................14

        B.      The Plaintiffs Are Third-Party Claimants and Therefore
                Cannot Maintain a Statutory Bad Faith Action Against
                Hartford ...............................................................15

        C.      The Plaintiffs Cannot Maintain a Common Law Cause
                Of Action Under Hayseeds ......................................29

CONCLUSION ........................................................................32

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) .........................33

CERTIFICATE OF FILING AND SERVICE ...........................................34

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>Cases:</u>

<u>Allstate Ins. Co. v. Watson</u>,
  876 S.W.2d 145 (Tex. 1994) ............................................................ 17

<u>Ashcroft v. Iqbal</u>,
  556 U.S. 662 (2009) ..................................................................... 3, 10

<u>Bd. of Dirs. of the Ass'n of the Apt. Owners of Discovery Bay Condo.</u>
  <u>v. United Pac. Ins. Co.</u>, 884 P.2d 1134 (Haw. 1994) ........................ 19

<u>Bell Atl. Corp. v. Twombly</u>,
  550 U.S. 544 (2007) ........................................................................ 10

<u>Brown v. Local 58, IBEW</u>,
  76 F.3d 752 (6th Cir. 1996) ............................................................. 12

<u>Caterpillar Fin. Servs. Corp. v. F/V Site Clearance I</u>,
  275 Fed. Appx. 199, 2008 U.S. App. LEXIS 8982
  (4th Cir. Apr. 25, 2008) ................................................................ 9, 10

<u>Chapman-Martin Excv'g & Grading, Inc. v. Hinkle Contracting Co.</u>,
  No. 2:11-cv-00563, 2011 U.S. Dist. LEXIS 138226
  (S.D. W.Va. Nov. 30, 2011) ............................................................. 22

<u>Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.</u>,
  945 So.2d 1216 (Fla. 2006) ........................................................ 18, 19

<u>Dodge v. Fid. & Deposit Co. of Maryland</u>,
  778 P.2d 1240 (Ariz. 1989) ............................................................. 19

<u>Duckworth v. State Admin. Bd. of Election Laws</u>,
  332 F.3d 769 (4th Cir. 2003) ........................................................... 10

<u>Dura-Wood Treating Co. v. Century Forest Indus.</u>,
  694 F.2d 112 (5th Cir. 1982) ........................................................... 11

Eichler v. Scott Pools, Inc.,
   513 N.E.2d 665 (Ind. App. 2d Dist. 1987) ......................................... 31

Elmore v. State Farm Mut. Auto. Ins. Co.,
   202 W. Va. 430, 504 S.E.2d 893 (W. Va. 1998).......... 9, 18, 28, 30, 31

Erie Ins. Prop. & Cas. Co. v. Johnson,
   No. 6:09-cv-01532, 2011 U.S. Dist. LEXIS 91623
   (S.D. W.Va. Aug. 15, 2011) ................................................................ 22

Estate of Plautz v. Time Ins. Co.,
   525 N.W.2d 342 (Wis. 1994) ............................................................. 27

Fraddosio v. Proctor Fin., Inc.,
   No. 3:10-CV-87, 2011 U.S. Dist. LEXIS 97434
   (N.D. W.Va. Aug. 30, 2011) .............................................................. 22

Fuller v. Nationwide Ins. Co.,
   No. 1:08-CV-129 TS, 2009 U.S. Dist. LEXIS 20999
   (D. Utah Mar. 16, 2009) ............................................................... 26, 27

Gateway Commc'ns, Inc. v. John R. Hess, Inc.,
   208 W. Va. 505, 541 S.E.2d 595 (W. Va. 2000)................................ 15

Goff v. Penn Mut. Life Ins. Co.,
   229 W. Va. 568, 729 S.E.2d 890 (W. Va. 2012)................... 25, 26, 27

Hartford Fire Ins. Co. v. Curtis,
   Nos. 12-0037 & 12-0522, 2013 W. Va. LEXIS 608
   (W. Va. June 5, 2013).................................................................... 6, 29

Hayseeds, Inc. v. State Farm Fire & Cas. Co.,
   177 W. Va. 323, 352 S.E.2d 1986 (W. Va. 1986)............ 1, 2, 6, 29, 30

Hertz Corp. v. Alamo Rent-A-Car, Inc.,
   16 F.3d 1126 (11th Cir. 1994)............................................................ 13

Hibner v. Ebersbach,
   110 W. Va. 177, 157 S.E. 178 (1931) ........................................ 23, 24

Int'l Fid. Ins. Co. v. Delmarva Sys. Corp.,
    No. 99C-10-065, 2001 Del. Super. LEXIS 165
    (Del. Super. Ct. May 9, 2001) ............................................................ 19

K-W Indus. v. Nat'l Sur. Corp.,
    754 P.2d 502 (Mont. 1988) ................................................................ 19

Kant v. Apfel,
    No. 97-1248, 1997 U.S. App. LEXIS 36444
    (4th Cir. Dec. 31, 1997)...................................................................... 11

Kosnoski v. Howley,
    33 F.3d 376 (4th Cir. 1994) ................................................................ 10

Lombardi Dev. Co. v. Mt. Olivet Methodist Church,
    No. 06-C-48M (Marshall Co. Cir. Ct. Aug. 20, 2007)...................... 18

Loudin v. Nat'l Liab. & Fire Ins. Co.,
    228 W. Va. 34, 716 S.E.2d 696 (W. Va. 2011)............................ 16, 17

Loyal Order of Moose, Lodge 1392 v. Int'l Fid. Ins. Co.,
    797 P.2d 622 (Alaska 1990) ............................................................... 19

Major v. Nat'l Indem. Co.,
    229 S.E.2d 849 (S.C. 1976) ............................................................... 31

Maxus Energy Corp. v. United States,
    31 F.3d 1135 (Fed. Cir. 1994) ........................................................... 12

Michael v. Appalachian Heating, LLC,
    226 W. Va. 394, 701 S.E.2d 116 (W. Va. 2010)............................... 31

Morton Motor Co. v. Fid. & Cas. Co. of New York,
    109 W. Va. 67, 152 S.E. 860 (1930) ................................................. 24

Moss Iron Works v. County Court,
    89 W.Va. 367, 109 S.E. 343 (1921) ............................................. 24, 25

Mylan Labs, Inc. v. Matkari,
    7 F.3d 1130 (4th Cir. 1993) ................................................................ 10

Orange Constr. Corp. v. Travelers Cas. & Sur. Co. of Am.,
    No. 2:10-cv-00315, 2010 U.S. Dist. LEXIS 37119
    (S.D. W. Va. Apr. 14, 2010)............................................................ 22

Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.,
    148 F.3d 396 (4th Cir. 1998), cert. denied, 525 U.S. 1104 (1999) .... 13

Papasan v. Allain,
    478 U.S. 265 (1986) ........................................................................ 10

Pearlman v. Reliance Ins. Co.,
    371 U.S. 132 (1962) ........................................................................ 15

Republican Party of N. Carolina v. Martin,
    980 F.2d 943 (4th Cir. 1992)........................................................... 10

S.W. Virginia Paving, Inc. v. Elmo Greer & Sons, LLC,
    691 F.Supp. 2d 677 (S.D. W. Va. 2009) .................... 19, 20, 21, 22, 23

Salmons v. State Farm Mut. Auto. Ins. Co.,
    No. 12-0891, 2013 W. Va. LEXIS 642 (W. Va. June 7, 2013) ......... 28

St. Paul Fire & Marine Ins. Co. v. Continental Cas. Co.,
    684 F.2d 691 (10th Cir. 1982)......................................................... 12

State ex rel. Allstate Ins. Co. v. Gaughan,
    203 W. Va. 358, 508 S.E.2d 75 (W. Va. 1998)........................... 27, 28

Suver v. Pers. Serv. Ins. Co.,
    462 N.E.2d 415 (Ohio 1984) ........................................................... 19

Szarkowski v. Reliance Ins. Co.,
    404 N.W.2d 502 (N.D. 1987)........................................................... 19

Transamerica Premier Ins. Co. v. Brighton Sch. Dist. 27J,
    940 P.2d 348 (Colo. 1997) .............................................................. 19

**Statutes:**

28 U.S.C. § 1441 ................................................................ 3

W. Va. Code § 31-17-2 .................................................... 14

W. Va. Code § 31-17-4 .................................................. 4, 14

W. Va. Code § 33-1-10 ................................................... 15

W. Va. Code § 33-11-4 ....................................... 1, 6, 9, 26, 31

W. Va. Code § 33-11-4a .............................................. passim

W. Va. Code § 38-2-39 ........................................ 20, 23, 24, 25

W. Va. Code 1923, chapter 75, section 12 ................................ 24

**Rules and Regulations:**

Fed. R. Civ. P. 12(b)(6) ...................................................... 7

Fed. R. Civ. P. 59(e) ................................................... 8, 12, 13

Fed. R. Civ. P. 60(a) ........................................... 1, 3, 8, 11, 12, 13

**Miscellaneous:**

Kelly Allbritton Katzman, Purpose of the Payment Bond and Who
    and What is Covered, in THE LAW OF SURETYSHIP 147
    (Edward G. Gallagher, ed., 2000) ......................... 23, 24, 25

## COUNTER STATEMENT OF THE ISSUES

1.      Did the district court abuse its discretion by correcting its clerical mistake such that the case would be dismissed "with prejudice" rather than "without prejudice" pursuant to Fed. R. Civ. P. 60(a)?

2.      Did the district court err in finding that the plaintiffs are third-party claimants and therefore barred from asserting claims for statutory bad faith or common law "substantially prevailing" damages, when they were unnamed in the mortgage broker bond at issue and had no contractual relationship with Hartford?

## COUNTER STATEMENT OF THE CASE

The plaintiffs, Jerry Lee Rhodes and Bonnie Cochran, filed suit against Hartford Fire Insurance Company ("Hartford") seeking statutory damages for an alleged violation of W. Va. Code § 33-11-4(9) and common law damages for "substantially prevailing" in an underlying suit on a statutory mortgage broker bond (the "bond") pursuant to <u>Hayseeds, Inc. v. State Farm Fire & Cas. Co.</u>, 177 W.Va. 323, 352 S.E.2d 73 (W. Va. 1986).  Hartford was the surety for Equity South Mortgage, LLC ("Equity South"), a now-defunct limited liability company which formerly operated as a residential mortgage broker in the State of West Virginia.  The plaintiffs are not parties to the bond and are not named therein, but the bond permits "any person...aggrieved by the misconduct of the principal" to

1

"maintain an action upon the bond" provided that a judgment is first obtained against the principal.  (JA 27).

In 2008, the plaintiffs sued Equity South in the Circuit Court for Putnam County, West Virginia for various violations of the Act in relation to a 2003 refinance transaction and 2004 loan modification on real property owned by the plaintiff Rhodes.  Equity South, which was at that time defunct, failed to respond, and the plaintiffs obtained a default judgment in the amount of $56,300 plus interest.  The plaintiffs then sued Hartford in the Circuit Court for Kanawha County, West Virginia, in 2010 (the "Kanawha County litigation") after Equity South failed to pay the judgment against it.  Summary judgment was granted in favor of the plaintiffs over Hartford's objection on March 27, 2012.

In the instant case, the plaintiffs seek damages for bad faith settlement practices and for a breach of the common law duty of good faith and fair dealing,[1] prompting them to initiate the Kanawha County litigation.  Hartford moved to dismiss the Complaint on the grounds (1) that as third party claimants against a surety bond, the plaintiffs are not "insureds" and are therefore barred from such recovery by W. Va. Code § 33-11-4a(a) and (2) no contractual relationship exists which would give rise to a common law duty of good faith and fair dealing.

---

[1] The concept that an insured can recover damages against his/her own insurer for a breach of the duty of good faith and fair dealing is often referred to in West Virginia as the "Hayseeds" or "substantially prevailing" doctrine, after Hayseeds, 177 W.Va. 323, 352 S.E.2d 73.

2

The district court correctly held that (1) W. Va. Code § 33-11-4a(a) applied to bar the plaintiffs' statutory claims and (2) <u>Hayseeds</u> damages are not available where the claimants, as here, have no contractual relationship to the surety. In its March 5, 2013 final order, the district court mistakenly dismissed the case without prejudice. On May 21, 2013, the district court corrected its error, dismissing the case <u>with</u> prejudice. It was entirely proper for the district court to correct this clerical error under Fed. R. Civ. P. 60(a), and even if it was not, the error was harmless as West Virginia law bars the damages sought by the plaintiffs herein.

## COUNTER STATEMENT OF THE FACTS

On October 5, 2012, the plaintiffs initiated this matter by filing their Complaint in the Circuit Court for Kanawha County, West Virginia. (JA 14). In accordance with 28 U.S.C. § 1441, *et seq*., Hartford filed its Notice of Removal on October 30, 2012, and removed the matter to the United States District Court for the Southern District of West Virginia at Charleston (the "district court"). (JA 5-9). Because the plaintiffs' factual allegations—but not their legal conclusions—must be taken as true for the purposes of deciding a motion to dismiss, the factual averments of the Complaint are summarized below, along with some additional facts from the record and procedural history. <u>See, e.g.</u>, <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

By their Complaint, the plaintiffs seek damages relating to a statutory mortgage broker bond in the amount of $50,000 which was furnished by Hartford's principal, Equity South, in accordance with W. Va. Code § 31-17-4, a provision of the West Virginia Residential Mortgage Lender, Broker and Servicer Act (the "Act"). (JA 14; JA 16; JA 27). [2]  Equity South was a residential mortgage broker licensed to do business in West Virginia. (JA 15). The bond, which is in the standard form drafted by the West Virginia Commissioner of Banking, names Equity South as principal, Hartford as surety, and the State of West Virginia as obligee. (JA 27). The condition of the bond requires Equity South to:

> conform to and abide by the provisions of [the] Act and of all rules and orders lawfully made or issued by the Commissioner of Banking thereunder, and shall pay to the State and shall pay to any such person or persons properly designated by the State any and all moneys that may become due or owing to the State or to such person or persons from said obligor in a suit brought by the Commissioner on their behalf under and by virtue of the provisions of said Act[.]

(JA 27). In addition to the obligation to pay moneys found due in a suit brought by the Commissioner of Banking, the bond confers a private right of action against the surety provided certain conditions are met:

> If any person shall be aggrieved by the misconduct of the principal, he may upon recovering judgement against such principal issue execution of such judgement and maintain an

---

[2] While no executed bond was made part of the record, Hartford agrees that the document located at JA 27 is a true copy of the bond's text. (Br. of Appellants, 5 n.2).

4

> action upon the bond of the principal in any court having jurisdiction of the amount claimed, provided the Commissioner of Banking assents thereto.

(JA 27).

The plaintiffs took out a home improvement loan brokered by Equity South in 2003.  (JA 15).  The proceeds from the loan were used to build an outbuilding and to "make the house livable."  (JA 15).  In 2004, the plaintiffs and Equity South modified the terms of the loan.  (JA 15).  The plaintiffs allege that the 2003 loan and the 2004 modification were both procured using "bogus" or "inflated" appraisals and through other misrepresentations.  (JA 15).

In 2008, the plaintiffs filed a complaint against Equity South and others, not including Hartford, in the Circuit Court of Putnam County, West Virginia, alleging that Equity South breached its fiduciary duty to the plaintiffs and otherwise violated the West Virginia Code as it pertains to mortgage brokers, causing damages.  (JA 15-16).  Equity South failed to file responsive pleadings, and the plaintiffs obtained a default judgment against Equity South on October 14, 2008, in the amount of $56,300 plus interest (the "Putnam County judgment").  (JA 16).  Hartford was never a party to or given notice of the Putnam County litigation before judgment was rendered against Equity South.

Equity South failed to satisfy the Putnam County judgment.  (JA 16).  The plaintiffs then provided Hartford with their first notice of claim in February 2009.

(JA 16). The plaintiffs claimed that Hartford was immediately liable for the Putnam County judgment despite the fact that they were never required to prove their allegations against Equity South or that they had been damaged in any way. (JA 16). Hartford chose to hold the plaintiffs to their burden of proof and did not pay the claim. (JA 16).

The plaintiffs then filed suit against Hartford in March 2010, in the Circuit Court of Kanawha County, West Virginia, seeking damages of $50,000, the principal amount of the bond (the "underlying suit"). (JA 16-17). Summary judgment was granted in favor of the plaintiffs in the underlying suit over Hartford's objection on March 27, 2012 (the "Kanawha County Judgment").[3] (JA 17).

Claiming that they are "obligees" under the bond and are considered "first-party insureds for all purposes," the plaintiffs demand damages against Hartford for "substantially prevailing" in the underlying suit pursuant to Hayseeds, Inc. v. State Farm Fire & Cas. Co., 177 W.Va. 323, 352 S.E.2d 73 (1986). (JA 17-18). The plaintiffs also claim violations of W.Va. Code § 33-11-4(9), which proscribes

---

[3] Hartford appealed the Kanawha County Judgment to the Supreme Court of Appeals of West Virginia, which consolidated the matter with another appeal and affirmed the circuit court's ruling in a 3-2 decision, finding that the bond is a "judgment bond" and therefore the plaintiffs did not have to present any evidence in support of their claim in order to recover the full penal sum of the bond. See Hartford Fire Ins. Co. v. Curtis, Nos. 12-0037 & 12-0522, 2013 W. Va. LEXIS 608 (W. Va. June 5, 2013). Hartford filed a Petition for Rehearing which is pending as of this filing.

various "unfair claim settlement practices." (JA 18-19). The plaintiffs request compensation for "emotional distress, inconvenience, annoyance, humiliation, embarrassment, aggravation and other general damages;" "costs, expenses and attorney fees;" and punitive damages. (JA 17; JA 19).

Hartford removed the case to the district court without objection from the plaintiffs. (JA 5-9). On November 8, 2012, Hartford filed its Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and memorandum in support, asking the district court to dismiss the Complaint for failure to state a claim upon which relief can be granted. (JA 23-41). The plaintiffs opposed the Motion to Dismiss and filed a motion to certify the issues raised therein to the Supreme Court of Appeals of West Virginia. (JA 42-61; JA 62-66). By two Orders dated March 4, 2013, the district court denied the Motion to Certify and granted Hartford's Motion to Dismiss. (JA 85-86; JA 87-94).

The following day, March 5, 2013, the district court entered its final Order, stating in part:

> [i]n accordance with the earlier Order granting the defendant's motion to dismiss [Docket 19], the court **ORDERS** that the case be **DISMISSED without prejudice** and **STRICKEN** from the docket.

(JA 95) (emphasis in original). Believing that the district court may have mistakenly dismissed the case without prejudice when it intended to dismiss <u>with</u> prejudice, Hartford filed its Motion to Correct Order of Dismissal on April 29,

2013. (JA 96-100). The motion was expressly limited to request relief only if the district court previously intended to dismiss the case with prejudice. (JA 97). On May 21, 2013, the Court granted Hartford's motion over the plaintiffs' objection, ruling in part:

> [p]ending before the court is the defendant's Motion to Correct Order of Dismissal [Docket 21]. The dismissal of the case without prejudice was a clerical mistake. Therefore, pursuant to Federal Rule of Procedure 60(a), the March 5, 2013 Order [Docket 20] shall be amended to read as follows:
>
> "In accordance with the earlier Order granting the defendant's motion to dismiss [Docket 19], the court further **ORDERS** that the case be **DISMISSED with prejudice** and STRICKEN from the docket. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties."

(JA 111) (emphasis in original). The plaintiffs filed their Notice of Appeal on June 19, 2013. (JA 112-13).

## SUMMARY OF ARGUMENT

The district court acted within the express authority granted by Fed. R. Civ. P. 60(a) when it corrected its clerical mistake to dismiss the case <u>with</u> prejudice rather than without. Hartford's motion to correct the March 5, 2013 order of dismissal was expressly limited to the grounds of clerical mistake and the court granted the motion on that basis alone. Fed. R. Civ. P. 59(e) does not apply and there was no time limit for Hartford's motion or the relief granted by the district court.

Nevertheless, even if the district court <u>did</u> err in granting Hartford's motion to correct, the error was harmless because the bond's language is such that the plaintiffs cannot in good faith plead any facts which would establish a right to recovery under W. Va. Code § 33-11-4(9) or <u>Hayseeds</u>. The district court correctly held that the plaintiffs are not "obligees" or "first-party claimants" to the bond. To maintain an action against the bond, they first had to pursue a claim against the bond principal, Equity South, putting the plaintiffs squarely within the definition of "third-party claimant" found in W. Va. Code § 33-11-4a(j). Their statutory bad faith claims are accordingly barred by W. Va. Code § 33-11-4a(a). Likewise, because they are not named in the bond and have no contractual relationship to Hartford, no implied duty of good faith and fair dealing runs to the plaintiffs, and they are not entitled to <u>Hayseeds</u> damages pursuant to <u>Elmore v. State Farm Mut. Auto. Ins. Co.</u>, 202 W. Va. 430, 504 S.E.2d 893 (W. Va. 1998), and later West Virginia decisions.

## ARGUMENT

### I.    Standard of Review

This Court reviews Rule 60(a) rulings under an "abuse of discretion" standard. <u>Caterpillar Fin. Servs. Corp. v. F/V Site Clearance I</u>, 275 Fed. Appx. 199, 204, 2008 U.S. App. LEXIS 8982 (4th Cir. Apr. 25, 2008). "Rule 60(a) is properly utilized 'to perform a completely ministerial task' (such as 'making a

judgment more specific in the face of an original omission') but not to 'revisit the merits of the question' or 'reconsider the matter.'" <u>Caterpillar</u>, 275 Fed. Appx. at 204-05 (quoting <u>Kosnoski v. Howley</u>, 33 F.3d 376, 379 (4th Cir. 1994)).

Hartford agrees that this Court must review the district court's decision on the Rule 12(b)(6) Motion to Dismiss under a *de novo* standard. (Br. of Appellants, 11); <u>Duckworth v. State Admin. Bd. of Election Laws</u>, 332 F.3d 769, 772 (4th Cir. 2003). Additionally, "[a] motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of N. Carolina v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992). "In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." <u>Mylan Labs, Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993). "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." <u>Id.</u> However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." <u>Ashcroft</u>, 556 U.S. at 678. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).

10

## II.     The District Court Acted Within its Authority Under Fed. R. Civ. P. 60(a) to Amend the March 5, 2013 Dismissal Order.

The district court explicitly relied on its express authority under Fed. R. Civ. P. 60(a) to correct its clerical mistake such that the dismissal of the case would be with prejudice.  There is no support in the record for the plaintiffs' implication that the district court's May 21 order was meant to correct an "error of substantive judgment" or that the court ever intended to do anything but dismiss the case with prejudice.  On the contrary, the district court stated in the May 21 order that the "dismissal without prejudice was a clerical mistake."  (JA 111).  Taken at face value, this statement confirms that the district court simply committed an error.  This error was easily correctable, and the district court was well within its discretion to do so.

In Kant v. Apfel, No. 97-1248, 1997 U.S. App. LEXIS 36444 (4th Cir. Dec. 31, 1997), an unreported decision of this Court cited by the plaintiffs, the Court observed that "Rule 60(a) applies when 'the court intended one thing but by merely clerical mistake or oversight did another[.]'"  Id. at *3 (quoting Dura-Wood Treating Co. v. Century Forest Indus., 694 F.2d 112, 114 (5th Cir. 1982)).  All of the available documents from the record, including the words of Judge Goodwin himself, support the conclusion that he meant to dismiss the case with prejudice on March 5, but by clerical mistake entered an order dismissing it "without

prejudice." A "clerical mistake" resulting in the dismissal of a case without prejudice is just as subject to Rule 60(a) as any other error.

None of the case law from other jurisdictions cited by the plaintiffs supports their argument that Fed. R. Civ. P. 59(e) must be applied to any order changing the prejudicial effect of a dismissal, even where solely intended to correct a "clerical mistake." In <u>Brown v. Local 58, IBEW</u>, 76 F.3d 752, 758 (6th Cir. 1996), the court identified the "critical inquiry" in determining whether a motion is properly brought under Rule 60(a) as "whether the motion 'calls into question the correctness of a judgment on some material point of fact or law, and may properly be cast in the form of a motion to reconsider, to vacate, to set aside, for reargument, or for rehearing.'" <u>Id.</u> (quoting <u>St. Paul Fire & Marine Ins. Co. v. Continental Cas. Co.</u>, 684 F.2d 691, 693 (10th Cir. 1982)). Hartford never called into question the correctness of the district court's judgment; its motion was premised on the belief that the district court had <u>actually</u> <u>intended</u> to dismiss the case with prejudice. (JA 97). The district court's concise May 21 order confirmed this belief.

<u>Maxus Energy Corp. v. United States</u>, 31 F.3d 1135, 1140 (Fed. Cir. 1994) dealt with a joint motion by the parties to amend a judgment based on a joint stipulation of dismissal. There was no indication that the trial court in <u>Maxus Energy</u> intended to do one thing in its original dismissal order but did another.

12

Likewise, in <u>Hertz Corp. v. Alamo Rent-A-Car, Inc.</u>, 16 F.3d 1126 (11th Cir. 1994), the trial court's initial dismissal without prejudice was not the result of an error or oversight and Rule 60(a) was not at issue.

Rule 59(e) is not the appropriate vehicle for correcting clerical mistakes like the one committed by the district court. This Court has ruled that there are only three grounds for granting a Rule 59(e) motion:  "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." <u>Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.</u>, 148 F.3d 396, 403 (4th Cir. 1998), <u>cert. denied</u>, 525 U.S. 1104 (1999). None of these grounds was cited by Hartford in making its Rule 60(a) motion or by the Court in granting it. A clerical mistake is always correctable under Rule 60(a) and the 28-day limit under rule 59(e) does not apply.

However, even if this Court should find that despite the district court's clear factual representation otherwise, the March 5 dismissal without prejudice was not merely a clerical error, it still should not reverse the judgment below. As will be discussed below, the district court was correct in ruling that the plaintiffs could not sustain a cause of action for bad faith or "substantially prevailing" under West Virginia statute or common law because the plaintiffs were not parties to or named in the bond. Therefore, any error occasioned by the May 21 order was harmless.

13

**III.    The District Court Properly Ruled that the Plaintiffs Are Third-Party Claimants and Therefore Barred from Asserting Claims for Statutory Bad Faith or Common Law "Substantially Prevailing" Damages.**

A. <u>Statutory and Regulatory Background</u>

Chapter 31, Article 17 of the Act governs entities which originate and service residential loans.  To do business in West Virginia, a mortgage broker such as Equity South is required to maintain a license administered by the West Virginia Commissioner of Banking (the "Commissioner").  W. Va. Code § 31-17-2(a).  A broker applying for a license must comply with the applicable requirements of West Virginia Code § 31-17-4, including subsection (f), which states in relevant part:

> At the time of making application for a broker's license, the applicant therefor shall...
>
> (3)    File with the commissioner a bond in favor of the state for the benefit of consumers or for a claim by the commissioner for an unpaid civil administrative penalty or an unpaid examination invoice in the amount of $50,000 for licensees with West Virginia loan originations of $0 to $3 million ... in a form and with conditions as the commissioner may prescribe and executed by a surety company authorized to do business in this state[.]

14

West Virginia considers suretyship to be a "kind of insurance."[4]  W. Va. Code § 33-1-10(f); see also Gateway Commc'ns, Inc. v. John R. Hess, Inc., 208 W. Va. 505, 508 n.3, 541 S.E.2d 595, 598 n.3 (W. Va. 2000).  Statutory unfair settlement practices actions brought by third-party claimants against insurers are barred by W.Va. Code § 33-11-4a(a), which states in relevant part:

> A third-party claimant may not bring a private cause of action or any other action against any person for an unfair claims settlement practice.  A third-party claimant's sole remedy against a person for an unfair claims settlement practice or the bad faith settlement of a claim is the filing of an administrative complaint...

Under W. Va. Code § 33-11-4a(j), a third-party claimant is defined as "any individual … asserting a claim against any ... legal entity insured under an insurance policy or insurance contract for the claim in question."

    B.  <u>The Plaintiffs Are Third-Party Claimants and Therefore Cannot Maintain a Statutory Bad Faith Action Against Hartford.</u>

The plaintiffs are third-party claimants under the plain language of W. Va. Code § 33-11-4a(j).  Their claim against Hartford is derived from the result of their litigation against Equity South, Hartford's principal.  Equity South was the equivalent of a "legal entity insured under an insurance policy," and the plaintiffs

_____

[4] West Virginia departs from the rule in the majority of jurisdictions that "suretyship is not insurance."  See, e.g., Pearlman v. Reliance Ins. Co., 371 U.S. 132, 140 n.19 (1962).  Hartford acknowledges that West Virginia considers it to be an "insurer" under § 33-1-10(f) with respect to the bond, but does not concede that this label would be accurately applied to it in any jurisdiction lacking a statutory provision similar to W. Va. Code § 33-1-10(f).

asserted a claim against it in order to proceed against Hartford. They have no contractual relationship to Hartford. They are not named in the bond and are not considered "insureds" of Hartford. No basis exists to provide the plaintiffs with first-party status, and their statutory bad faith claim against Hartford is therefore barred by W. Va. Code § 33-11-4a(a).

In Loudin v. Nat'l Liab. & Fire Ins. Co., 228 W. Va. 34, 716 S.E.2d 696 (W. Va. 2011), the Supreme Court of Appeals of West Virginia examined the distinction between first-party and third-party actions for bad faith in a case where a claimant sued his own insurer for injuries sustained while his vehicle was being operated by his brother with his permission. It held, "[a] first-party bad faith action is one wherein the insured sues his/her own insurer for failing to use good faith in settling a claim filed by the insured." Id. at 38, 716 S.E.2d at 700. In contrast, the Court noted that "a third-party bad faith action is one that is brought against an insurer by a plaintiff who prevailed in a separate action against an insured tortfeasor." Id. As to the latter claims, the Court recognized that "in 2005 the legislature expressly prohibited statutory third-party bad faith causes of actions [sic] against insurers under W. Va. Code § 33-11-4a." Loudin, 228 W. Va. at 38, 716 S.E.2d at 700 (emphasis in original). The Court explained the reason for this rule:

> A third party claimant has no contract with the insurer, has not paid any premiums, has no legal relationship to the insurer or

16

> special relationship of trust with the insurer, and in short, has no basis upon which to expect or demand the benefit of the extra-contractual obligations imposed on insurers with regard to their insureds.

Loudin, 228 W.Va. at 41, 716 S.E.2d at 703 (quoting Allstate Ins. Co. v. Watson, 876 S.W.2d 145, 149 (Tex. 1994)).

Under the unique facts of Loudin, the court found that the claim there had characteristics of both first-party and third-party bad faith claims, because the claimant was a "named insured" on the policy in question and because he filed a claim under that policy.  Loudin, 228 W. Va. at 39-40, 716 S.E.2d at 701-02. However, the plaintiffs here bear only the characteristics of third-party claimants. Hartford was the surety for Equity South, essentially insuring its compliance with West Virginia law pertaining to mortgage brokers and its ability to pay fines and restitution ordered by the State.  The plaintiffs brought a separate action against Equity South and, after prevailing in that suit, brought an action against Hartford. By contrast to the plaintiff in Loudin, the plaintiffs here were not "insured" under any document, they paid no premium, and Hartford certainly was not their "own insurer."

The bond language giving the plaintiffs the right to bring a claim against Hartford confirms that an adversarial relationship between the plaintiffs on one hand, and Hartford and Equity South on the other, is required for there to be any recovery under the bond.  As persons allegedly "aggrieved by the misconduct" of

Equity South, the plaintiffs accused Equity South of various violations of West Virginia law as it applies to mortgage brokers, and thus assumed an adversarial posture to Equity South, and by extension Hartford.  (JA 27).  No implied duty of good faith and fair dealing runs to the plaintiffs because they did not enter into a contract with Hartford.  In fact, their relationship with Hartford is "inherently adversarial."  See Elmore v. State Farm Mut. Auto. Ins. Co., 202 W. Va. 430, 436, 504 S.E.2d 893, 899 (W. Va. 1998).  Hartford cannot be expected to subordinate the interests of Equity South, its principal, who paid premium for the bond's issuance, to those of the plaintiffs, who paid no premium and are not named as parties to the bond.   See id. ("The significant duty owed by the insurer to the insured certainly forecloses any like duty owed by the insurer to a third party who is the adversary of the insured").

The plaintiffs attempt to distance themselves from this straightforward application of West Virginia insurance and surety law by claiming that they are "obligees" under the bond.  But the State of West Virginia is the named obligee, not the plaintiffs.  They cite no cases which suggest that a party unnamed in a bond can ever be considered an obligee with first-party status.  The vast majority of the cases cited by the plaintiffs involve bad faith claims brought by named obligees to

the bonds at issue, and are therefore inapposite.[5]  Without a contractual relationship to Hartford, and having succeeded in a prior suit against Hartford's principal, the plaintiffs are garden-variety third-party claimants.  Indeed, if the plaintiffs were to be considered "obligees" under the bond, there would be no such thing as a third-party claimant against any surety bond, and any party who could bring a claim against a surety bond would be considered an obligee with first party status.[6]  This is clearly not the intent of the West Virginia legislature, which recognized the

---

[5] See Lombardi Dev. Co. v. Mt. Olivet Methodist Church, No. 06-C-48M (Marshall Co. Cir. Ct. Aug. 20, 2007) (claim brought by named obligee under construction performance bond); Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co., 945 So.2d 1216, 1219 (Fla. 2006) (same); Dodge v. Fid. & Deposit Co. of Maryland, 778 P.2d 1240, 1241 (Ariz. 1989) (same); Loyal Order of Moose, Lodge 1392 v. Int'l Fid. Ins. Co., 797 P.2d 622, 623-24 (Alaska 1990) (same); Transamerica Premier Ins. Co. v. Brighton Sch. Dist. 27J, 940 P.2d 348, 350 (Colo. 1997) (same); Int'l Fid. Ins. Co. v. Delmarva Sys. Corp., No. 99C-10-065, 2001 Del. Super. LEXIS 165, *2-3 (Del. Super. Ct. May 9, 2001) (same); Bd. of Dirs. of the Ass'n of the Apt. Owners of Discovery Bay Condo. v. United Pac. Ins. Co., 884 P.2d 1134, 1135 (Haw. 1994) (claim brought by named obligee under construction performance and maintenance bonds).

[6] The few non-West Virginia cases cited by the plaintiffs which do support the existence of a bad faith claim brought by a party unnamed in a bond did not do so on the basis that such a party is considered an "obligee," but because the jurisdictions where those claims were brought are not bound by an analogue to W. Va. Code § 33-11-4a(a), which clearly bars third-party bad faith claims in West Virginia.  See K-W Indus. v. Nat'l Sur. Corp., 754 P.2d 502 (Mont. 1988); Szarkowski v. Reliance Ins. Co., 404 N.W.2d 502 (N.D. 1987); Suver v. Pers. Serv. Ins. Co., 462 N.E.2d 415 (Ohio 1984); compare S.W. Virginia Paving, Inc. v. Elmo Greer & Sons, LLC, 691 F.Supp. 2d 677, 680 n.3 (S.D. W.Va. 2009) (holding that the Supreme Court of Ohio's reasoning in Suver is "clearly contrary to the law in West Virginia, which bars such claims").

existence of third-party claims in the surety context and carefully circumscribed the rights afforded by those claims.

In reasoning that the plaintiffs were third-party claimants, the district court understandably placed significant weight on its previous decision in S.W. Virginia Paving, Inc. v. Elmo Greer & Sons, LLC, 691 F.Supp. 2d 677 (S.D. W. Va. 2009) (hereinafter "Elmo Greer"). Elmo Greer concerned a classic construction payment bond dispute. There, the surety bond at issue was a statutory contract payment bond, issued pursuant to W. Va. Code § 38-2-39, naming the McDowell County Board of Education as the owner; Elmo Greer & Sons, LLC ("EG&S") as the principal; and Travelers Casualty Insurance Company of America ("Travelers") as surety. Id. at 678. The Travelers bond referred to "claimants" several times, but did not name any claimant or the plaintiff, Southern West Virginia Paving, Inc. ("SWVP"), as a party to the bond. Id.

SWVP, as a subcontractor, furnished labor, materials, and equipment on a public construction project on which EG&S served as the general contractor. Id. When EG&S failed to pay SWVP in full, SWVP submitted a claim against Travelers requesting that it pay under the payment bond. Id. Travelers refused to pay on the grounds that a previous payment made by EG&S extinguished the debt, and SWVP responded by filing a lawsuit alleging a breach of contract against EG&S and Travelers, and unfair settlement practices and common law bad faith

claims against Travelers only. <u>Elmo Greer</u>, 691 F.Supp. 2d at 678. Travelers moved to dismiss the counts for unfair settlement practices and common law bad faith, arguing that these counts were barred under W.Va. Code § 33-11-4a. <u>Id.</u> at 678-79. In opposition to Travelers' motion, SWVP argued that it was a first-party claimant, just as the plaintiffs have alleged here. <u>Id.</u> at 679.

The court in <u>Elmo Greer</u> held that "[s]tatutory bad faith claims by third-parties are barred by West Virginia Code § 33-11-4a." <u>Id.</u> Continuing, it explained that SWVP also could not assert a claim under the common law: "[s]imilarly, a third-party claimant may not bring common law bad faith *Hayseeds* claims against an insurer." <u>Id.</u> (citing <u>Gallagher v. Allstate Ins. Co.</u>, 74 F.Supp. 2d 652, 655 (N.D. W.Va. 1999)). Because "the relevant statute and the Supreme Court of Appeals clearly intended to prevent all but the insured from suing the insurer for unfair claims settlement practices," the court held that SWVP "was not a party to the payment bond," but was "merely a claimant." <u>Elmo Greer</u>, 691 F.Supp. 2d at 679-80. Accordingly, Travelers had an "adversarial relationship with SWVP, not a contractual relationship from which a duty of good faith and fair dealing would arise. <u>Id.</u> at 680. As such, SWVP was "clearly a third-party claimant and barred from asserting claims for unfair settlement practices and bad

faith." <u>Elmo Greer</u>, 691 F.Supp. 2d at 680.  Travelers' motion to dismiss was granted.[7]  <u>Id.</u>

The plaintiffs do not argue that <u>Elmo Greer</u> was improperly decided. Rather, they attempt to distinguish it from the facts of this case by arguing that the public contract payment bond in <u>Elmo Greer</u> was issued "for the protection of the owner," while the statutory mortgage broker bond at issue here was issued "for the benefit of consumers."  (Br. of Appellants, 20).  The plaintiffs' reasoning is at odds with the facts of <u>Elmo Greer</u> and fundamental concepts of surety law.

A public contract payment bond is not obtained by the owner of a public project--by definition, an arm of the government-- but by the general contractor. As the <u>Elmo Greer</u> court noted, the contract payment bond in that case was

---

[7] <u>Elmo Greer</u> has been followed routinely in federal courts sitting in West Virginia. <u>See</u> <u>Chapman-Martin Excv'g & Grading, Inc. v. Hinkle Contracting Co.</u>, No. 2:11-cv-00563, 2011 U.S. Dist. LEXIS 138226, *18-19 (S.D. W.Va. Nov. 30, 2011) (plaintiff subcontractor was "not a party to the bond agreement" and therefore had an "adversarial relationship" with the surety; common law bad faith and unfair settlement practices claims were therefore barred);  <u>Orange Constr. Corp. v. Travelers Cas. & Sur. Co. of Am.</u>, No. 2:10-cv-00315, 2010 U.S. Dist. LEXIS 37119, *2-5 (S.D. W. Va. Apr. 14, 2010) (subcontractor was barred from asserting bad faith claims against a contractor's payment bond where the named obligee was West Virginia University).  The rationale in <u>Elmo Greer</u> has also been applied outside the context of contract payment bonds.  <u>See</u> <u>Fraddosio v. Proctor Fin., Inc.</u>, No. 3:10-CV-87, 2011 U.S. Dist. LEXIS 97434, *6-7 (N.D. W.Va. Aug. 30, 2011) (homeowner could not state a bad faith claim against insurer on force-placed homeowner's policy where he was not the named insured); <u>Erie Ins. Prop. & Cas. Co. v. Johnson</u>, No. 6:09-cv-01532, 2011 U.S. Dist. LEXIS 91623, *19-20 (S.D. W.Va. Aug. 15, 2011) (plaintiffs could not recover for bad faith under a commercial auto insurance policy because there was no contractual relationship between them and the insurer).

procured by the general contractor, not the owner. Elmo Greer, 691 F.Supp.2d at 678. If a subcontractor--who has no contractual relationship to the surety--is dissatisfied with the payment it receives, or is not paid at all, it may bring a claim directly against the surety on the payment bond, just as the plaintiff did in Elmo Greer. Very rarely is a claim made on a payment bond by an owner or any party other than a subcontractor, supplier, or the like. Kelly Allbritton Katzman, Purpose of the Payment Bond and Who and What is Covered, in THE LAW OF SURETYSHIP 147, 148 (Edward G. Gallagher, ed., 2000) (listing the various likely claimants against a payment bond, which include subcontractors, materialmen, laborers, and utilities, but not the obligee or owner). Yet payment bond claimants are not entitled to bring statutory bad faith claims, as the plaintiffs seem to concede.

A review of West Virginia cases interpreting W. Va. 38-2-39 demonstrates that there is no reason to distinguish between public contract payment bond claimants and mortgage broker bond claimants in terms of whether they enjoy first- or third-party status. The purpose of a payment bond is not to protect owners but to ensure that subcontractors, suppliers and materialmen are paid what is due and owing to them. In Hibner v. Ebersbach, 110 W. Va. 177, 179, 157 S.E. 178, 178 (1931), the West Virginia Supreme Court of Appeals quoted the code

23

provision requiring public contract payment bonds,[8] and held, "[t]he manifest purpose of this provision is to protect the men who actually furnish[] material or machinery, or perform[] labor on the structure." Hibner, 110 W. Va. at 179, 157 S.E. at 178 (citing Moss Iron Works v. County Court, 89 W.Va. 367, 374, 109 S.E. 343 (1921)). Similarly, the Court has held that by enacting the precursor to W. Va. Code § 38-2-39, "it was intended that laborers and materialmen who furnished labor and material to a public structure should be as secure in the payment of their debts as if they were furnishing materials to or laboring on a private structure." Morton Motor Co. v. Fid. & Cas. Co. of New York, 109 W. Va. 67, 71, 152 S.E. 860, 861 (1930). This reasoning is in line with the universal understanding among surety practitioners regarding the purpose of contract payment bonds. See Katzman, supra, at 147 ("A payment bond provides the remedy of payment to unpaid claimants who supply labor or materials to a construction project").

In no event would an owner of a public project be "compelled to pay public moneys" if a contractor failed to pay its subcontractors, as the plaintiffs suggest, because there is typically no contractual relationship between an owner and a subcontractor, and because West Virginia specifically exempts public lands from mechanic's liens. W.Va. Code § 38-2-39 ("Nothing in this article shall be

---

[8] At the time Hibner was decided, the relevant provision was found in W. Va. Code 1923, chapter 75, section 12. It is not materially different from that found in W. Va. Code § 38-2-39 today.

24

construed to give a lien upon such a public building or improvement as is mentioned in this section, or upon the land upon which such public building or improvement is situated"); see also Moss Iron Works, 89 W.Va. at 373, 109 S.E. at 346 ("There can be no mechanic's lien on public property ... unless the statute creating such lien expressly so provides, since such a lien would be contrary to public policy, and would also be incapable of enforcement, not being subject to forced sale"); Katzman, supra, at 148 ("Liens typically cannot be imposed upon publicly owned property. Therefore, on public projects a payment bond acts as a substitute for the property, and thus a remedy for unpaid subcontractors and suppliers who supply labor or material for the public benefit"). Because both public contract payment bonds and mortgage broker bonds are subject to claims made by third parties who may be unidentifiable at the time the bonds are issued, the same rule should be applied to each with respect to bad faith claims. Third party claimants may assert a cause of action against a surety to demand payment, but they cannot bring a claim for bad faith because their relationship with the surety is inherently adversarial, not contractual.

The plaintiffs imply that the West Virginia courts' refusal to recognize common law third-party bad faith claims and the West Virginia's legislature's abolition of statutory third-party bad faith claims was somehow abrogated by the decision in Goff v. Penn Mut. Life Ins. Co., 229 W. Va. 568, 729 S.E.2d 890 (W.

Va. 2012). <u>Goff</u> was a life insurance case where the named, primary beneficiary of a life insurance policy sought to "stand in the shoes of the decedent insured" for purposes of asserting an action for the insurer's violation of the statutory duty of good faith and fair dealing under W. Va. Code § 33-11-4(9). <u>Goff</u>, 229 W. Va. at 570, 729 S.E.2d at 892. The Court found that the beneficiary had the right to pursue a statutory bad faith claim against the insurer, but that right did not arise simply because he "was the individual receiving the proceeds," as the plaintiffs argue. <u>Id.</u> at 574, 729 S.E.2d at 896; (Br. of Appellants, 22). Rather, the Court found that a life insurance policy "is clearly a first-party contract." <u>Goff</u>, 229 W. Va. at 573-74, 729 S.E.2d at 895-96 (citing <u>Fuller v. Nationwide Ins. Co.</u>, No. 1:08-CV-129 TS, 2009 U.S. Dist. LEXIS 20999 (D. Utah Mar. 16, 2009)). In purchasing a life insurance policy, the decedent "sought to provide financial security to [the beneficiary] upon her demise as well as to gain the peace of mind that such a gift provides the donor." <u>Goff</u>, 229 W. Va. at 574, 729 S.E.2d at 896. The Court stated its narrow holding as follows:

> Accordingly, we hold that upon the death of the insured, a primary beneficiary of a life insurance policy has standing to bring a statutory bad faith claim against the insurer pursuant to West Virginia Code § 33-11-4(9). In bringing such a suit, the beneficiary stands in the shoes of the insured in asserting a first-party type of statutory bad faith action.

<u>Goff</u>, 229 W. Va. at 574, 729 S.E.2d at 896.

The facts of this case are easily distinguishable from Goff. Unlike the life insurance policy at issue there, the mortgage broker bond issued by Hartford expressly contemplates the institution of an action against its principal, Equity South. Insofar as it grants rights to third parties such as the plaintiffs, those rights only exist to the extent that they can establish that Equity South violated West Virginia law as it pertains to mortgage brokers and that they suffered damages. The bond was not obtained by Equity South for the "peace of mind" that Equity South would enjoy from its issuance, but so that it could operate as a mortgage broker in West Virginia. The bond is plainly a third-party contract, payable, in part, to potential third-party claimants provided certain conditions are met. It is nothing like a life insurance policy.

The result in Goff is peculiar to life insurance and based upon a small body of law tailored to the unique considerations surrounding those policies. See Goff, 229 W. Va. at 572-73, 729 S.E.2d at 894-95 (citing Estate of Plautz v. Time Ins. Co., 525 N.W.2d 342 (Wis. 1994); Fuller, 2009 U.S. Dist. LEXIS 20999). Nothing in it contradicts the long-standing principle that, "[a] third-party bad faith action is one that is brought against an insurer by a plaintiff who prevailed in a separate action against an insured tortfeasor." Goff, 229 W. Va. at 571, 729 S.E.2d at 893 (quoting State ex rel. Allstate Ins. Co. v. Gaughan, 203 W. Va. 358, 369,

508 S.E.2d 75, 86 (W. Va. 1998)).  The plaintiffs obviously fit under this definition and their claims are therefore barred.

The Supreme Court of Appeals of West Virginia recently confirmed that the rule against statutory and common law third-party bad faith claims remains alive and well notwithstanding Goff.  Salmons v. State Farm Mut. Auto. Ins. Co., No. 12-0891, 2013 W. Va. LEXIS 642, *3 (W. Va. June 7, 2013) (citing Elmore, 202 W. Va. 430, 504 S.E.2d 893; W. Va. Code § 33-11-4a).  The plaintiff in Salmons was the owner of a parked car struck and damaged by a tortfeasor who happened to be insured by the same insurer as the plaintiff.  Salmons, 2013 W. Va. LEXIS 642 at *1-2.  The insurer allegedly failed to properly handle the plaintiff's claim, and the plaintiff filed suit for common law and statutory bad faith.  Id. at *2.  Applying the definition of "third-party claimant" found in W. Va. Code § 33-11-4a(j), the Court held that because the plaintiff was an "individual who was asserting a claim against another individual or other legal entity [who] was insured under an insurance policy for the claim in question," she satisfied the definition.  Id. at *5.  Her claims were therefore barred.  Id. at *6-7.

From the above decisions, it is clear that the mere fact that a claimant can assert a claim against an insurer or surety does not guarantee the right to pursue extracontractual damages for statutory bad faith.  The plaintiffs' complaints that mortgage broker bond sureties will be "insulated from bad faith liability" if the

district court's decision is affirmed are best directed toward the West Virginia Legislature.[9]  Because the plaintiffs are third-party claimants, they have no cause of action and the district court properly dismissed the Complaint.

> C.    The Plaintiffs Cannot Maintain a Common Law Cause of Action Under *Hayseeds*.

Just as with their statutory bad faith claim, the plaintiffs' claim for "substantially prevailing" pursuant to Hayseeds is without merit.  The Supreme Court of West Virginia recognized in Hayseeds that an insured party may recover damages when he or she "substantially prevails" in litigation against his or her insurer:

> Whenever a policyholder substantially prevails in a property damage suit against its insurer, the insurer is liable for:  (1) the insured's reasonable attorneys' fees in vindicating its claim; (2) the insured's damages for net economic loss caused by the delay in settlement, and damages for aggravation and inconvenience.

---

[9] The plaintiffs smear Hartford's claims handling in this and other cases, alleging that Hartford will "engage in all manner of delay tactics to keep from paying its bond proceeds."  (Br. of Appellants, 23).  Without delving into issues and facts not contained in the record, Hartford observes that two Justices of the Supreme Court of Appeals of West Virginia agreed that Hartford was justified in its decision not to pay the bond proceeds without the plaintiffs being held to their burden of proof.  Hartford Fire Ins. v. Curtis, 2013 W. Va. LEXIS 608, *47 (Ketchum, J., dissenting) ("Hartford plainly had the right to defend the merits of the suit against the principal"); Id. at *50 (Benjamin, C.J., dissenting) ("Under the language contemplated in the bonds, the surety should have been given opportunity to defend").  This fact alone shows that Hartford was not acting in bad faith by insisting that the plaintiffs provide some concrete evidence that they were damaged by Equity South, rather than simply paying their claim on demand.

Syl. pt. 1, <u>Hayseeds</u>, 177 W. Va. 323, 352 S.E.2d 73.  In <u>Elmore</u>, a case decided 12

years later, the Court considered the following certified question of law:

> Whether, under West Virginia law, there is a legally cognizable
> cause of action by a third-party claimant against an insurance
> carrier for common law breach of fiduciary duty and for
> common law breach of the implied covenant of good faith and
> fair dealing.

<u>Elmore</u>, 202 W. Va. at 431, 504 S.E.2d at 894.

In answering the question, the Court explained the underpinnings of <u>Hayseeds</u> and

the "substantially prevailing" doctrine:

> This rule is based on the fact that, "when an insured purchases a
> contract of insurance, he buys insurance – not a lot of
> vexatious, time-consuming, expensive litigation with his
> insurer."  **Because a <u>Hayseeds</u> type action is grounded on the
> existence of a contract between an insurer and its insured**
> and not the insurer's motives in denying a property damage
> claim, "we consider it of little importance whether an insurer
> contests an insured's claim in good or bad faith…To impose
> upon the insured the cost of compelling his insurer to honor its
> contractual obligation is effectively to deny him the benefit of
> his bargain."

<u>Id.</u> at 433, 504 S.E.2d at 896 (quoting <u>Hayseeds</u>, W. Va. at 329, 352 S.E.2d at 79-

80) (emphasis added).  "The premise underlying <u>Hayseeds</u> was that the insurer had

contractually promised the insured such coverage."  <u>Elmore</u>, 202 W. Va. at 434,

352 S.E.2d at 897.

Accordingly, the "existence of a contractual relationship" between "insurers

and insured" is necessary to support a <u>Hayseeds</u> claim.  <u>Id.</u> at 434, 352 S.E.2d at

897.  "In the absence of such a relationship there is simply nothing to support a common-law duty of good faith and fair dealing on the part of insurance carriers toward third-party claimants."  Id.  The Elmore Court therefore answered the certified question in the negative, declining to expand Hayseeds to allow third-party claims against insurers.[10]  Id.  The decision placed West Virginia "squarely in line with the overwhelming weight of authority on this issue."  Id.  In fact, Elmore cites at least 34 decisions from other jurisdictions holding that tort liability for breach of the duty of good faith and fair dealing does not exist where there is no contractual relationship between the claimant and the insurer.  Id. at 434-35, 435 n.5, 352 S.E.2d at 897-98, 898 n.5 (citing, e.g., Major v. Nat'l Indem. Co., 229 S.E.2d 849, 850 (S.C. 1976) ("At common law, no right to maintain suit directly against the insurer existed absent privity of contract between the claimant and the insured"); Eichler v. Scott Pools, Inc., 513 N.E.2d 665, 667 (Ind. App. 2d Dist. 1987) ("A claimant has no standing to sue the defendant's insurer for handling a claim negligently or in bad faith.  There is no duty running from the insurer to the

---

[10] Elmore also held that an implied private cause of action exists under the unfair settlement practice provisions of W. Va. Code § 33-11-4(9).  See Elmore, 202 W. Va. at 438, 352 S.E.2d at 901.  As discussed above, such a cause of action in favor of third-party claimants was abolished by the enactment of W. Va. Code § 33-11-4a in 2005.  See Michael v. Appalachian Heating, LLC, 226 W. Va. 394, 404-05, 701 S.E.2d  116, 126-27 (W. Va. 2010) (Ketchum, J., dissenting) (explaining how a surfeit of frivolous unfair settlement practice claims prompted the West Virginia legislature to enact W. Va. Code § 33-11-4a).

claimant to settle a claim, nor is the claimant a third-party beneficiary of the duty owed the insured by the insurer").

Because the plaintiffs did not enter into any contract with Hartford and are not named in the bond, they cannot claim the benefit of a duty of good faith and fair dealing. Hartford was not under any common law duty to the plaintiffs. They have no common law cause of action against Hartford under <u>Hayseeds</u> and the Complaint was properly dismissed.

## CONCLUSION

For the reasons stated above, Hartford respectfully requests that this Court affirm the district court's March 4, 2013 Order granting Hartford's Rule 12(b)(6) Motion to Dismiss and May 21, 2013 Order dismissing this case with prejudice.

Dated:  August 30, 2013                 Respectfully submitted,

By:   */s/ Thomas J. Moran*
Archibald Wallace, III
Thomas J. Moran
WALLACEPLEDGER, PLLC
The Capstone Center
7100 Forest Avenue, Suite 302
Richmond, VA  23226
Telephone:  (804) 282-8300
Facsimile:   (804) 282-2555
axwallace@wallacepledger.com
tmoran@wallacepledger.com

*Attorneys for Defendant-Appellee*
*Hartford Fire Insurance Company*

32

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.     This brief complies with the Type-volume limitation of Fed. R. App. P.
32(a)(7)(B) because:

The word count of this brief is <u>8,322 words</u>, excluding those parts of
the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P.
32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using
<u>Microsoft Word</u> in <u>Times New Roman, 14 point</u>.

August 30, 2013

*/s/ Thomas J. Moran*
Thomas J. Moran, Esquire

33

## CERTIFICATE OF FILING AND SERVICE

Pursuant to Federal Rule of Appellate Procedure 25(c) and Local Rules

25(a)(4) and 31(d), I hereby certify that on August 30, 2013, the foregoing Brief of

Appellee was electronically filed with the Clerk of the United States Court of

Appeals for the Fourth Circuit using the Court's CM/ECF system which will send

a notice of such filing to:

> Scott S. Blass, Esq.
> Bordas & Bordas, PLLC
> 1358 National Road
> Wheeling, WV  26003
> *Counsel for Plaintiffs-Appellants*

and I caused eight copies of the foregoing Brief of Appellee to be hand-delivered

to the Clerk of the United States Court of Appeals for the Fourth Circuit at the

following address:

> Patricia S. Connor, Clerk
> U.S. Court of Appeals for the Fourth Circuit
> 1100 East Main Street, Suite 501
> Richmond, Virginia 23219-3517

> */s/  Thomas J. Moran*
> Thomas J. Moran
> *Attorney for Defendant-Appellee*
> *Hartford Fire Insurance Company*